Good afternoon. My name is Lou Schock and I represent Appellant Yoon Chul-Yoo. In exchange for a total of $4.5 million in funding from a number of investors, appellee Matthew Arnold agreed to make a film, The Door, and to provide recoupment of the investment, along with a percentage of any proceeds from the film, to the investors. Mr. Arnold alleged that he never got the money, lost use of the $4.5 million, to make his movie. Pursuing a default, Mr. Arnold asked the district court to let him simply pocket all $4.5 million that he says the investors... How did he pocket it? Why did he say profit? Yeah. He still has to make the film. Well, that's not what the district court ruled. They didn't say anything about him having to make the film. Well, he still has that obligation to the original investors, right? Whether it's actually eventually going to be made or not is a different issue. Well, my understanding... It's not going to his pocket. Well, my understanding, though, is that's what's happened so far. He already got $2 million of that from the state court case. Right, and that was offset. Yes, that's correct. But then here, the court awarded him the remainder, as well as attorney's fees and interest. But the fact is, as I understand, he made the movie. They changed the name, and they made the movie with a different set of investors. So that's what ultimately happened. It became called The Shadow People, as I understand from IMDB on the Internet. But so in this situation, what he's asked the court, and what the court ruled, is just to give him the money. So the district court awarded him a windfall, ruling that he is entitled to all the investors' money. What makes it a windfall? Because it's giving him the money. How did the district court classify the amount that was awarded? Did Judge Morris say, I'm going to give the defendant a windfall of $8,000? Certainly the district court did not use that word. That's my word. Well, how did the district court classify it? The district court gave him, like I said, it was broken into three parts. It was broken into about $2.5 million in compensatory, and then an additional attorney's fees and interest that added up to a total of about $4.5 million. That's what they gave him. So in other words, it would be all of the, they gave him all of the $4.5 million. So what is the point you're making now, that the district court erred in awarding any money at all, or awarded too much, or classified it wrongly? I think the key point that I'm trying to make is that even if one accepts the default, the manner in which the court calculated damages was incorrect. There was simply no basis for that. There were the admitted allegations and the counterclaim, weren't there? No, but the problem is the manner in which Mr. Arnold would not be entitled to the $4.5 million. Mr. Arnold might be entitled to some type of lost profits, but that's what he'd have to show. He wouldn't be entitled to just get the $4.5 million. And like I said, the court's order below didn't say anything about, oh, now he has to go make the movie, or he has to give the investors back their money, or he has to give them receipts from the movie. And like I said, at this point I don't even think that's possible. I mean, wasn't the court's award essentially equitable in nature in this sense, that the action was brought for breach of contract, but Mr. Arnold returned money to you and his daughter, Sophia, that they wrongfully converted to her uses, and the court ordered that money to be returned as part and parcel of the judgment, correct? Well, the allegations, and the allegations were a bit muddled, but certainly one of the allegations was that there was actually a new contract entered. Even Mr. Arnold alleged that. So initially the investor said, we'll give you $4.5 million. That was the allegation. Then later there was a dispute over how Mr. Arnold was spending some of the money, et cetera, and then they went back, and even Mr. Arnold characterized it as a new agreement to give him only $2 million. So then we had the $2 million and $1.7 million that had been placed in a dark hole account at one point. The $2 million Mr. Arnold now has, he got that. Through the state court action. That's correct. So he actually got that $2 million already. The $1.7 million, he alleges, went somewhere else, perhaps to Sophia. But in any event, certainly what the court's decision was, the district court looked at it as a breach of contract, and even when the court talked about conversion, did it in the context of breach of contract, if we look at pages 23 to 25 of the excerpts of record, which is part of the district court's decision. But there were also fraud and conversion promissory estoppel claims, not just the breach of contract theory, right? That's correct. There were also those claims. But again, when we're talking about the damages he suffered, even under tort damages, you're not entitled to more money than you would have ended up with, essentially. And this is why I get back to the lost profits issue or some other type of debt. But it sounds to me like half of the award is attorney's fees and interest at, what, 9% or 10%? That's correct. So we're really arguing over about, what, 1.7 to 2 million of the court's judgment? Well, again, I would argue that even with regard to where they awarded the attorney's fees on, I apologize, where they awarded the interest, the $2 million approximately, with regard to that, that was based off a breach of contract. And again, when they're saying the breach of contract, it was the wrong number, though, that the district court was basing the interest off of. So she didn't base any portion of the award on any of these other claims? Promissory estoppel, conversion, fraud? You know, and again, in fairness, if we look at the decision, it's mixed. She says, well, I could have maybe done it this way or that way. But ultimately, we're talking primarily breach of contract, although she does label some of it conversion, but she says breach of the contract, converting the money. But the evidence before the district court showed there was evidence to support conversion and fraud, was there not? Yes, the allegations. The problem is that your client never contested those allegations because he didn't appear, he didn't produce discovery. He didn't do any of the things he should have been doing if he really had a legitimate defense to the counterclaims. Well, actually, the district court found, although it denied our motion for relief from the default, it did find that he had legitimate defenses. But he kept firing his lawyers and wouldn't pay them. Correct. And then withdrew and this litigation drug on for a couple, three years. I'm only focusing on the issue you raised of did he have any type of meritorious defense, and the district court actually found he did. But the problem is that he was the original plaintiff in the action, and then he failed to prosecute it. So the district court is obviously familiar with the entire record of the litigation, and I think that's all fair game for us to look at on appeal when we try to decide whether your client was deprived of due process. Well, but again, I go back to the damages. When the court was calculating that, and we're looking at, even if we talk about conversion, as you were saying, that money, the whole $4.5 million, $1.7 million, any portion of it was never Mr. Arnold's or Dark Hall's just to do with as he pleased. That was never in his possession for that purpose. Even when some of that money was in a bank account belonging to him, that was there pursuant to some type of agreement. It wasn't just there, oh, Mr. Arnold can keep this and do whatever he wants with it. So that's why I believe the court characterized it more focusing on the breach of contract issue, because there was a fight over, okay, well, was there a new contract, what happened with that, et cetera. I mean, it looked to me like what happened was Mr. Arnold originally said, I need $4.5 million to make this movie. The investor said, okay, we'll give you $4.5 million. But then things began going awry, and they didn't come up with the full $4.5 million, but they came up with three and change. And then I still understand there was this Japanese investor who had another $800,000, but I'm not sure where that all fits into the puzzle. The allegation on that, and again, there's no evidence, but the allegation was that that $800,000 or $900,000 went to Sophia Yu, Mr. Yu's daughter. Right. And that Mr. Arnold felt he was entitled to have that money in his account. Well, if the deal was for $4.5 million, that seems to be a perfectly reasonable argument, isn't it? But Mr. Arnold also alleged that the deal changed, that there was a new deal. Well, the deal changed because your client basically, in essence, unilaterally reduced the amount of money that the investors were willing to part with by $2 million. And then Mr. Arnold gave some of that money to, I guess, what, a joint account that then Sophia cleaned out, contrary to the instructions that it required to signature. Right. And when you talk about the money that Sophia, as the court put it, cleaned out, the $1.95 million, Mr. Arnold has that. Through the state court action. Right. He got that money. Right. So that money, he already got $2 million. But that's conduct that's still relevant to what was before Judge Morrill on the breach of contract and the other claims in the counterclaim, are they not? But even with regard to the other, again, Mr. Arnold himself alleged that there was a new deal. And he testified in the state court action, and this is in the excerpts of the record as well, that he believed it was a new deal when they went from 3 point, whatever it was, 4.5 down to 2. So certainly under that, he's been, he got his whole $2 million. But like I said, regardless, when we look at this, he's not into the whole $4.5 million. He never was going to end up with $4.5 million once he made his movie. I mean, I guess maybe if he could prove that would have been his lost profits. But short of that. Well, as I understand it from what you said earlier, he was forced to find other investors. In essence, he, what's the word, mitigated his damages by finding other investors to make up the difference. Right. Well, and in fact, if that's what happened, like I said, I just know what we saw, what I can see on the Internet, that the movie was made, etc. But then exactly right, though. He should, if he mitigated his damages, that should be part of the, even if we accept the default for the sake of argument, that doesn't make him now entitled to the $4.5 million. If anything, it should offset that. Do you want to save some time for rebuttal? Shall we hear from Mr. Arnold? Yes, thank you, Your Honor. Okay. I'm Don Cox, and I represent Matt Arnold in Dark Hall. May it please the court, counsel. And I first want to thank the panel for giving me a two-day delay so I could go to my daughter's vet school graduation. That was much appreciated. The last time I was out here, I couldn't do that, and I missed both a vet school and a law school graduation, so I appreciate this. Well, as a dog owner, we need, I can tell you, we need good vets. Delighted to hear that she graduated. Yes, and she's headed to Cornell now for the next level of training. Yeah, good school. Congratulations. Yeah. Thank you. Thank you. I want to, I noticed that nothing was said about the default, and we believe the default was absolutely appropriate. The judge went to great lengths to apply the appropriate law on the default matter. There was simply no participation by Mr. Yu in the lower court. He would hire and fire lawyers. He's come up with this theory now that the lawyers, he couldn't communicate with the lawyers, that they filed the case without his permission, that they did all these things. And there's not an iota of evidence in the record to support that. Let's get to the calculation of damages, so 2.5 plus in compensatory damages. As you read the district court's decision, what categories did that fall in? Was it for fraud? Was it a straight breach of contract theory? Well, I think, as you pointed out, Your Honor, there were several theories which she upheld, breach of contract, fraud, conversion, and promissory estoppel. But I think they all led to the same damages, which was the 4.5 million, which was the original agreement. So I think that each of those could go into that. The easiest one to see is the breach of contract for the $4.5 million. And that is a liquidated amount, and there's no need for a hearing on that. And I want to address one issue, which I think is extremely important here. None of these issues were raised to the district judge. None of the arguments we're seeing here today were raised with the district court. A counsel got into the case in July. The district court gave her opinion that liquidated the damages and came up with the damage number in March of the following year. The only motion filed with the district court was the motion to set aside the entry of default. There was never a brief filed, never anything given to the district court to give the district court the benefit of these arguments that are now being advanced today. And likewise— Did you raise that point in your brief? We raised—yeah, on the hearing issue, we specifically raised the issue that they never asked for a hearing in the court below, and they didn't. So that issue was raised in our brief as to the matter of the hearing. But to go forward, this new— What about the other arguments he's made? Did he make those to the district court? No. Not the damage arguments. The only thing—he argued damages to the district court in the context that he had a defense when he was trying to get the entry of default set aside. But he never filed a brief, even though there was a brief pending when he got in the case. He never addressed that brief, never asked for an opportunity to file a response. And let's go to the issue he raised about, well, there's got to be some kind of—he just put this money in his pocket. When this case was filed, there was no movie. We don't know what—at the time this case was being pled, we don't know what the outcome is going to be. It may well be that Mr. Arnold would have to account to his investors. I assume he would to his new investors. But that was never raised below. There was no pleading file below asking for an accounting or asking for him to explain after the movie's made where the money went. And that's because Mr. Yu didn't participate in the pleadings. He just took a walk, just took a walk. And so now we're coming up today with this new theory that we have to account for this money. And he could have pled that in the district court. He could have litigated that in the district court. And he never did. And so we've been shadowboxing with Mr. Yu for years now, since 2007. And we still don't have our money. And we still have these claims that we've done something wrong when all we tried to do was make a movie based upon a $4.5 million promise. And the idea that they can, after some good lawyering here, come up with these new theories, that's inappropriate on appeal. The court applied the statutory 10 percent interest rate to the entire judgment, right? Well, she applied the 10 percent rate to the three categories of damages that were found. Which is the entire judgment, the entire amount of the compensatory judgment, right? Well, except for the attorney's fees. Right, which is not a part of the – okay, now, this is my question because it makes a difference. As I understand it, the 10 percent rate applies only to contract damages. Right. Is that right? Just a minute. Let me finish. Okay. And it's hard for me to tell from Judge Morrow's opinion, you know, how you can get everything under contract. Part of it seems to be fraud damages, doesn't it? No, sir. Well, you know, because of, you know, it was lost because of the misrepresentation that you and his daughter made. But anyway, how do you get the whole thing, you know, under the 10 percent interest rate? That's what I want to know. Let me go through how it breaks out on the contract. We start with a $4.5 million contract. I want you related to now what, you know, the award that Judge Morrow actually made, right? In her judgment, this is the way she broke it down. In the judgment, she had compensatory damages from you due of $2.5 million, okay? And that's the difference between the 4.5 and the 1.9 million that he – What I'm getting at is how did she classify the – you know, she didn't really classify the damages, did she? I mean, you could argue part of it was from, you know, tort and not from contract. I don't believe so. She just has one lump sum of damages. Two and a half – the $2,561,141.82 equals $4.5 million less the $1,000,009 that we got. It's 100 percent on its face, straight arithmetic. And then – so that's the 2.5. It may be arithmetic, but you allege, you know, several bases that would justify an award to your client, right? Including tort bases for awarding. We did, and as I – And she doesn't say, you know, under what category she's awarding it. In other words, how can you tell how much of this should be under the 10 percent, you know, and how much of it under a lesser rate? Because 10 percent is a lot of interest, you know, for your – Well, one, I think the rule of law is that if there's any basis for justifying a district court's judgment, then the court should accept that. And based upon – I think you can justify it either way. I'm sorry? I think it can be justified either way. Right. And the second point I want to make is this is not an issue that was raised to the district court. This is new argument by counsel when he had an opportunity to do that and didn't do it. Does the panel have any other questions? No, no, no. Again, though, I ask you, you really don't seem to – I mean, you're now claiming that he's waived these arguments, but you don't argue waiver in your brief, do you? The only time I argued it was with respect to the hearing. But I think it is broader than that. Counsel, what's your response to the argument that the contract was modified and that there was actually a second contract for a lesser amount? Well, the testimony believed by the district or found by the district court, and it was in Mr. Arnold's affidavit, was that that quote-unquote modification was caused by a fraudulent act. They came in and said the investors don't want to spend this money on this picture, and it turned out that he was fraudulently induced to enter into that agreement because the money he testified in his affidavit went to Sophia Yu for other purposes. It wasn't an investor issue at all. So he was fraudulently induced to modify the original $4.5 million contract on the basis that he was told in a lie that the investors didn't like the $4.5 million. That's my response to that. So I think in conclusion, the standard here is abuse of discretion. The district court went to amazing lengths to deal with this issue on both the entry of default and on the judgment. I mean, her opinions are extremely lengthy, and I think it's quite difficult now to come in after the fact and say she abused her discretion when she wasn't ever given many of these arguments at the time. And given her detailed findings, I think the judgment should stand. Thank you. Thank you very well. Counsel, I think you've got about three and a half minutes on rebuttal. Thank you, Your Honor. Just very briefly, again, Mr. Arnold and his company, Darkhall, he was only entitled to the benefit of the bargain. That's all he was entitled to, nothing more. So what's he going to do with the money now? We know the film's been made. And like I said, there was nothing said in the district court's order about, oh, now he's got to give the money back to the investors if he collects it from Mr. Yu. So what's he going to do with that? But counsel says, and that's how I read the record, the representation was made to him by your clients, that the investors had changed their mind and they didn't want to give him $4.5 million to make the movie, so he parted with a couple of million bucks that he gave back to them, but instead of that money being returned to the investors in Korea, the money actually was used by Sophia for something else. That's the state of the record. That's what he alleged, but even then, talking about Sophia, not about Mr. Yu, not about her father. No one said, oh, Mr. Yu took that money. Doesn't the record show that she was acting as her father's agent throughout in the negotiation of the original contract? Again, I don't believe the record shows that. I know there are allegations of that. But like I said, again. Well, I mean, Mr. Arnold says that in his declaration, doesn't he? All of this goes back to, again, the damages. What did he actually suffer? The benefit of his bargain. He got his $2 million. What happened to that $2 million? Did he give any of that back to the investors? So the fact is, under that bargain he made, he might have made some profit. He might have made nothing when he finished the movie. I don't know. It could have been a big hit. It could have been nothing at all. But that's what he needed to show to the district court, and he didn't. The district court just said, okay, you can have whatever investment money they were going to give you. You're entitled to have that investment money. Did you make this argument to the district court when you moved to set aside the default? Yes, when we moved to set aside the default, we raised a number of these damages arguments. In fact, it was a large part of our brief, and it was, again, the judge actually found in the district court opinion that although she denied our motion, obviously, since we're here, she did find, though, that he did have meritorious defenses based on these damages issues. But the problem was that he had not acted properly through the course of the litigation in order to timely assert them. But regardless, the law is clear that in a situation where a default judgment, even though we accept the allegations as true, that is for everything except damages. So with regard to damages, he still had an obligation to prove that up, whether by hearing or affidavit or whatever, and he did not do that. All he did was say, I was told I could get $4.5 million. I want that money. That was all. Okay. I think we have your argument. If the panel has anything further, you've got it. Thank you for your time. Thank you very much. The case just argued is submitted, and we are adjourned.
judges: Tashima, Tallman, Nguyen